UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FINGERLAKES MALL, LLC,

                        Plaintiff,

      -against-

FINGERLAKES MALL ACQUISITION, LLC,

                        Defendant.
------------------------------------------------------------X

Case No.: 07-cv-6788

**COMPLAINT**

      Plaintiff, Fingerlakes Mall, LLC, by its attorneys Silverman Perlstein & Acampora LLP, complaining of the defendant Fingerlakes Mall Acquisition, LLC, alleges as follows:

    1.    At all times mentioned herein, Fingerlakes Mall, LLC ("Plaintiff" or "Seller") is a Delaware limited liability company having offices at 124 Johnson Ferry Road NE, Atlanta, Georgia.

    2.    Upon information and belief, and at all relevant times mentioned herein, Fingerlakes Mall Acquisition, LLC ("Defendant" or "Purchaser") is a Delaware limited liability company with an address c/o Greenberg Nicoletta & Stein LLP, 370 Lexington Avenue, Suite 703, New York, New York.

    3.    Upon information and belief, and at all relevant times mentioned herein, Fingerlakes Mall Acquisition, LLC ("Defendant" or "Purchaser") is a domestic limited liability company with an address c/o Greenberg Nicoletta & Stein LLP, 370 Lexington Avenue, Suite 703, New York, New York.

    4.    Jurisdiction is proper in this Court based upon diversity of citizenship pursuant to 28 U.S.C. §1332 because Plaintiff is completely diverse from the Defendant, and because the amount in controversy exceeds $75,000 exclusive of costs.

    5.    Venue is proper in this Court based on 28 U.S.C. §1391(b)(i) because Defendant conducts business in the territorial area covered by the Southern District of New York.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

6. On or about August 18, 2006, Seller and Purchaser entered into Agreement of Sale (the "Agreement") whereby, among other things, Seller agreed to sell certain real property located Aurelius, New York together with the buildings and improvements thereon, including a shopping center containing approximately 427,750 square feet commonly known as the Fingerlakes Mall (the "Fingerlakes Mall"). A copy of the Agreement is annexed hereto and made a part hereof as **Exhibit 1**.

7. Except for certain post-closing obligations contained in the Agreement, the transfer of title pursuant to the Agreement substantially occurred on October 23, 2006.

8. Seller has, to the extent possible, fully complied with and performed all of its obligations arising under the Agreement.

9. Purchaser has failed to comply with its obligations arising under the Agreement as set forth herein.

### Leasing Escrow

10. Paragraph 4.3 of the Agreement, inter alia, provides:

> Prior to Closing, Seller shall use commercially reasonable efforts to enter into new leases at the Property providing a minimum of $85,000 per year in minimum rents ("Seller's Additional Income Obligation") separate and apart from the rents shown on the rent roll attached hereto as Exhibit "B" (not including rent shown thereon for the Communicate Wireless space). Buyer specifically acknowledges that Seller is currently working to replace the tenant known as Communicate Wireless with a new tenant and to lease premises at the Property to Seafood Express and Wendy's, however, Seller shall have the right to substitute tenants or lease other premises at the Property in satisfaction of Seller's Additional Income Obligation, provided that all leases proposed in satisfaction of Seller's Additional Income Obligation shall have a minimum five (5) year initial terms and shall be subject to the approval of the Buyer, which shall not be unreasonably withheld or delayed.
>
> * * *
>
> In the event Seller has not fully satisfied Seller's Additional Income Obligation as of Closing, a part of the Purchase Price equal to: (i) the shortfall in income below the additional $85,000 multiplied by five (x 5) and (ii) any costs not yet paid or payable associated with the executed leases which partially satisfy the Seller's Additional Income Obligation shall be placed in Escrow with Escrow Agent (the "Seller's

Additional Income Obligation Escrow").

* * *

Seller shall have the opportunity to satisfy the unsatisfied part of Seller's Additional Income Obligation following Closing, but only up to and including December 31, 2006. In the event Seller completes any such leasing after Closing, the amount in the Seller's Additional Income Obligation Escrow attributable to the income represented by such new leasing LESS any costs attributable to such new leasing shall be disbursed to Seller upon the applicable tenant's commencement of rent payments under its lease. After Closing, Escrow Agent shall disburse to Buyer, where appropriate, or a designated third party . . . parts of the Seller's Additional Income Obligation Escrow as needed to pay costs associated with such leases at request of Buyer and Seller, provided that either Buyer or Seller may request disbursement of such amounts with notice to the other party, but Escrow Agent shall not disburse such amount until five (5) business days shall have elapsed from the receipt of such request without objection from the other party.

11. Seller deposited $425,000 with the escrow agent referred to the Agreement to fund the Leasing Escrow.

12. The Leasing Escrow was established for the purpose of compensating Seller in the event certain leasing occurred.

13. Purchaser failed to comply with the terms of the foregoing provision by (i) failing to reasonably and timely approve a lease for the tenant Fingerlakes News and Gifts, (ii) failing to reasonably approve a lease for Mrs. Fields Cookies, and (iii) by failing to permit the Seller to recover certain monies by virtue of those proposed leases.

**New York Department of Transportation Escrow**

14. Paragraph 4.8 of the Agreement provides inter alia:

NYDOT Permit. Seller is in the process of negotiating plans and documentation with the New York Department of Transportation ("NYDOT") regarding the creation of a deceleration lane at the eastern entrance to the Property, and certain changes to the Clark Stree Extension (together, the "NYDOT Work") being performed in the area shown on Exhibit "F". Seller agrees to be responsible for any and all costs of the NYDOT Work. At the Closing, Seller shall escrow for the benefit of Buyer at Closing: (a) the amounts remaining due under any guaranteed maximum or fixed price contracts for performance of the work; and (b) 125% of the agreed upon estimated costs to perform any aspect of the NYDOT Work which is not then covered by a binding guaranteed maximum or fixed price contract. In support of subpart (a) above, Seller shall deliver to Buyer a written

statement from its contractor verifying the amounts remaining due under its contract and verifying that the work covered by such contract represents the full scope of work required by the agreements with NYDOT. Notwithstanding such escrow, Seller shall remain responsible for payment of any Seller approved change orders or unanticipated costs associated with the NYDOT Work. Buyer agrees not to knowingly take any action which increases such costs.

15. Additionally, paragraph 4A.3 of the Agreement provides:

<u>NYDOT Permit</u>. Seller has provided Buyer with all currently available information regarding the road work required at the Property by NYDOT prior to the opening of the adjoining hotel site (both the general area of the NYDOT Work and the hotel site being shown on Exhibit "F"). Seller has agreed to be responsible for the costs of the NYDOT Work, and to escrow for the benefit of Buyer at Closing the estimated costs to complete any unfinished elements of the NYDOT Work. Notwithstanding such agreements of Seller, upon its acquisition of the Property, Buyer will be required to apply to NYDOT for its approval of Buyer as a new "permittee" (as such term is used in the NYDOT documents), and Buyer covenants and agrees to provide such information as may be necessary to install Buyer as a substitute permittee so that the NYDOT Work can continue to timely completion.

16. The foregoing provisions relate to the creation of a deceleration lane of the east entrance to the Fingerlakes Mall as well as certain changes to the Clark Street extension (the "NYDOT Work Escrow").

17. Pursuant to the agreement of sale, plaintiff deposited into escrow $416,568.62 to perform the NYDOT Work Escrow which represents 125% of the then estimated cost of performing the work pursuant to the Agreement.

18. Prior to the closing, pursuant to the Agreement, Seller had obtained a bid for performing the NYDOT work, had obtained a permit to perform the NYDOT work, and filed the required bond with the NYDOT.

19. However, due to the fact that closing took place in October 2006, the aforementioned work could not be completed because the weather was too cold.

20. Accordingly, the NYDOT Work Escrow was created to fund the work once the weather turned consistently warmer in the spring, 2007.

21. The Agreement provides, that the defendant must apply for a permit in its name and to perform whatever else was necessary to be a substitute permitee for the NYDOT Work Escrow so that the work can be completed.

22. Defendant never performed any of its obligations arising pursuant to the foregoing contract provisions and plaintiff has been damaged in an amount to be determined at trial but in no event less than $416,568.62.

**Post-Closing Rents "True-Up"**

23. Paragraph 15.1.1 of the Agreement that provides, in relevant part:

> At the time of Closing and delivery of the Deed, collected rent and unapplied security deposits, if any, from the tenants, shall be adjusted between Seller and Buyer as of the Closing Date with charges and collected rent for the day of Closing allocated to the Buyer. . . Any uncollected rents received by Buyer after Closing and collectable for the period prior to Closing, shall promptly be forwarded to Seller; . . .

24. The managing agent for the Fingerlakes Mall has requested that the defendant, on numerous occasions, be permitted to remit at least $150,450.30 to the plaintiff as "true-up", money that is due and owing pursuant to the Agreement.

25. Despite repeated demand, however, defendant has failed to authorize the managing agent to remit that payment.

**FIRST CLAIM FOR RELIEF**
(incorporating all prior allegations)

26. At all times, Seller has performed its obligations arising under the Agreement.

27. Purchaser has breached the Agreement by failing to comply with the provisions thereof related to the Leasing Escrow, the NYDOT Escrow, and the Post-Closing Rents "True-Up."

28. As a result of the foregoing, Seller has been damaged in an amount to be determined at trial but in no event less than $1,000,000.

## SECOND CLAIM FOR RELIEF
(incorporating all prior allegations)

29. By reason of the foregoing, Purchaser has been unjustly enriched.

30. As a result of the foregoing, Seller has been damaged in an amount to be determined at trial but in no event less than $1,000,000.

## THIRD CLAIM FOR RELIEF
(incorporating all prior allegations)

31. The Agreement provides at paragraph 18.13, in relevant part, that

> In any legal action (including arbitration and mediation) to enforce a party's rights and obligations under this Agreement, the prevailing party shall be entitled to an award of all reasonable legal fees and expenses, court costs, filing fees, and related costs incurred in regard to such action.

32. By reason of the foregoing, Seller seeks an award of attorneys' fees and costs of this action, in an amount to be determined at trial, but in no event less than $5,000.

**WHEREFORE,** plaintiff demands that judgment be entered as follows:

(a) against defendant on the first claim for relief in an amount to be determined at trial but in no event less than $1,000,000;

(b) against defendant on the second claim for relief in an amount to be determined at trial but in no event less than $1,000,000;

(c) against defendant on the third claim for relief in an amount to be determined at trial but in no event less than $5,000;

(d) costs of this action; and

(e) such other and relief as the Court deems just and proper.

Dated: Jericho, New York
July 25, 2007

SILVERMAN PERLSTEIN & ACAMPORA LLP
Attorneys for plaintiff Fingerlakes Mall, LLC

By: _____
Robert J. Ansell (RJA-3710)
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300