EXHIBIT "F"

Site Plan of are showing Drainage Parcel, NYDOT Work area and
future "No access" area



STATE OF NEW YORK
DEPARTMENT OF TRANSPORTATION
REGION THREE
333 EAST WASHINGTON STREET
SYRACUSE, NEW YORK 13202
www.dot.state.ny.us

CARL F. FORD, P.E.
ACTING REGIONAL DIRECTOR

THOMAS J. MADISON, JR.
COMMISSIONER

August 7, 2006

Mr. Andrew R. Wiggers
Gregory Greenfield & Associates, LTD
124 Johnson Ferry Road, NE
Atlanta, Georgia 30328

Dear Mr. Wiggers:

RE:   FINGERLAKES MALL EXPANSION
ROUTES 5 &20, TOWN OF AURELIUS
CAYUGA COUNTY

Thank you for you August 2nd e-mail regarding the pending Highway Work Permit, Right-of-Way Map and Statement of Dedication.

We have determined the Bond value to be $300,000. Please ensure it is in the exact format as PERM 44e, with Fingerlakes Mall, LLC as the Principal.

In accordance with Item #5 of the "Attachment to Permit", should the anticipated sale of the Fingerlakes Mall property take place prior to completion of all permit work, including the Right-of-Way dedication limiting access, a new Highway Work Permit must be obtained by the new owner. The following documents will be required from the new mall owner in order to obtain the new permit:

1.  NYSDOT PERM 33 Highway Work Permit Application for Non-Utility Work: The application is to be completed for a "Major Commercial Driveway", Category 5.a.3. The new owners will not be charged an additional application fee.

2.  NYSDOT PERM 17 Certificate of Insurance for Highway Permits: This certificate is to be completed by the new Permittee's insurance agent in the same name as that on

Mr. Andrew Wiggers
August 7, 2006
Page 2

the PERM 33 Permit applications. Coverage level "C", signifying extended coverage, must be checked on the reverse of the form. This form must be submitted by the insurance company directly to the New York State Department of Transportation, Central Permit Office, 50 Wolf Road – 1st Floor, Albany, NY 12232.

3. NYSDOT PERM 36 Attachment to Permit: Any required special conditions will be prepared by the NYSDOT and forwarded to the applicant prior to Permit issuance. It is not anticipated that there will be any significant changes relative to the Attachment to Permit required for the Gregory Greenfield Fingerlakes Mall permit document.

4. NYSDOT PERM 50e Inspection and/or Supervision Payment Agreement: This agreement is to be completed in the name of the Permit applicant for reimbursement for approximately three (3) days of inspection time. The inspection fee does not need to be submitted at this time.

5. NYSDOT Signal Appurtenance Release: This agreement gives the Department permission to enter the Fingerlakes Mall property in the future for the purpose of maintaining or replacing traffic signal appurtenances including loop wire, conduit, pullboxes, etc.

6. NYSDOT Right-of-Way Statement of Dedication: A Statement of Dedication Limiting Access is to be completed in the name of the new Permittee as the Reputed Property Owner. The property to be dedicated is shown on the map prepared by Prudent Engineering and must be attached to the Statement. The new Permittee will be required to have the map updated by Prudent Engineering to include the name of the new owner. The above documents are required at the time of Permit issuance.

Subsequent to Permit issuance, the Permittee must provide the following for the dedication process to continue:

    a.  Appropriation Map, approved by the NYSDOT
    b.  Abstract of Title (current within 6 months)
    c.  Ten year tax search (current within 6 months)
    d.  Property Tax Map

7. The Department will require a notarized copy of an executed agreement between Gregory Greenfield and the new owners to allow use of the approved Highway Work Permit plans, supporting engineering calculations, and miscellaneous documentation as prepared by Beardsley Design Associates, Prudent Engineering and Stantec, Inc.

8. The Department will also require a notarized document indicating that the bonding company holding the Gregory Greenfield bond has named the new mall owner as Principal for the penal sum of $300,000.00.

Mr. Andrew Wiggers
August 7, 2006
Page 3


    This letter or the information contained within should be disclosed to a prospective buyer of the Fingerlakes Mall property and included in any Gregory Greenfield sale agreement for this property.

    The documents requested in items 6 through 8 may require review by the Department's legal affairs group, so we encourage timely submission by the new owner. If you have any questions or comments regarding the Permit process detailed in this letter, please contact Ms. Patti Williams of our office at (315) 428-4623, or by e-mail at PWILLIAMS@dot.state.ny.us.


                              Very truly yours,

                                DIANA L. GRASER, P.E.
                                Transportation System Operations Engineer


Attachments

PERM 17 (11/05)

NYS Department of Transportation
Central Permit Office
50 Wolf Road, 1st Floor
Albany, NY 12232
(518) 485-2999 or 1-888-783-1685



NYSDOT ACCOUNT NUMBER

## CERTIFICATE OF INSURANCE FOR SPECIAL HAULING, DIVISIBLE LOAD OVERWEIGHT, AND HIGHWAY WORK PERMIT INSURANCE REQUIREMENTS
TO BE PREPARED BY INSURANCE AGENCY OR INSURANCE COMPANY

**THIS CERTIFICATE OF INSURANCE WILL SUPERSEDE ALL OTHER CERTIFICATES OF INSURANCE NOW ON FILE WITH THE NYSDOT CENTRAL PERMIT OFFICE AND MUST BE IN EFFECT FOR THE FULL TERM OF THE PERMIT. EXPIRATION OF, OR LACK OF, LIABILITY INSURANCE AUTOMATICALLY INVALIDATES THE PERMIT.**

**CHECK BOX(ES) FOR EACH TYPE(S) OF PERMIT(S) OBTAINED FROM THE NYS DEPARTMENT OF TRANSPORTATION**
(see reverse for permit definitions)

❏ **Special Hauling Permits**  ❏ **Divisible Load Overweight Permits**
  ❏ **Highway Work Permits**      ❏ **Restricted Vehicle Permits**

1. NAME OF PERMIT APPLICANT_____
(The Legal Name of the Business Entity, i.e., Corporation, Partnership or individual, that owns/controls the motor carrier operation. Name on Insurance Certificate & Permit Application must be identical – one name only. The Applicant's motor vehicle registration operator's name must also match for Divisible Load Overweight Permits. NOTE: If DBA, also provide Name of Legal Entity and Copy of "Certificate of Conducting Business under an Assumed Name" that was filed in County Clerk's Office.)

2. PHYSICAL ADDRESS OF PERMIT APPLICANT_____
(Provide street address of _principal_ place of business; may attach additional PERM 17 ATTACHMENT sheet listing physical addresses of branch offices _if application for permits will be for those locations._)
  ❏ PLEASE CHECK HERE IF THIS IS A CHANGE OF ADDRESS

2a. MAILING ADDRESS OF PERMIT APPLICANT_____
  (If different than above)    ❏ PLEASE CHECK HERE IF THIS IS A CHANGE OF ADDRESS

3. TELEPHONE NUMBER OF PERMIT APPLICANT_____

4. NAME OF PERMIT APPLICANT CONTACT PERSON_____

5a. MOTOR VEHICLE LIABILITY POLICY NUMBER_____
  (See Policy requirements in B on reverse)    Binders, and unassigned policy numbers are only valid for 30 days.

5b. EFFECTIVE DATE_____    EXPIRATION DATE_____
  The wording "Continuous Until Cancelled" in place of expiration date is NOT acceptable.  Maximum duration one calendar year.

6a. PROTECTIVE LIABILITY POLICY NUMBER_____
  (See Policy requirements in A or C on reverse)    Binders, and unassigned policy numbers are only valid for 30 days.

6b. EFFECTIVE DATE_____    EXPIRATION DATE_____
  The wording "Continuous Until Cancelled" in place of expiration date is NOT acceptable.  Maximum duration one calendar year.

7.  MOTOR CARRIER ID. All permit applicants must provide a USDOT number to obtain permits, with the exception of Federal & State Agencies and municipalities, and private individuals transporting personal property. (Check as appropriate – Commercial carriers must have a USDOT Number.

  ❏ USDOT Number_____  ❏ Exempt - Federal & State Agency/Municipality  ❏ Private Individual

USDOT numbers are issued by the Federal Motor Carrier Safety Administration (Form MCS-150) for interstate carriers or NYSDOT Passenger & Freight Safety Division (Form MCS-150 NY) for intrastate carriers. To obtain a USDOT number you can:
  (1) use the internet at: http://safer.fmcsa.dot.gov to apply online;            (Interstate carriers)
  (2) call toll-free 1-800-832-5660 or 518-431-4145 and press "0" for mail or fax information;   (Intrastate carriers)
  (3) call toll-free 1-866-881-2630 for mail or fax information                (Intrastate carriers)

8. FEIN Number_____
(Federal Employee Identification Number is also known as the IRS Tax Identification Number and is required for All For Hire Carriers, agencies and municipalities.)

**REVERSE SIDE MUST BE COMPLETED**

PERM 17 ATTACHMENT (11/05)
NYS Department of Transportation
Central Permit Office
50 Wolf Road, 1st Floor
Albany, NY 12232
(518) 485-2999 or 1-888-783-1685



## ATTACHMENT TO
## CERTIFICATE OF INSURANCE FOR SPECIAL HAULING, DIVISIBLE LOAD OVERWEIGHT, AND HIGHWAY WORK PERMIT INSURANCE REQUIREMENTS

THIS FORM MUST BE SUBMITTED WITH THE APPROPRIATE CERTIFICATE OF INSURANCE (PERM 17)

TO BE PREPARED BY INSURANCE AGENCY OR INSURANCE COMPANY

1. NAME OF PERMIT APPLICANT _____

2. USDOT Number_____        3. FEIN Number_____

4. Consider the Certificate of Insurance (PERM 17) as PAGE 1, this ATTACHMENT is PAGE_____ of_____ TOTAL PAGES

5. BRANCH OFFICES - Additional locations also listed and covered by the same insurance policy indicated on page one, the Certificate of Insurance (PERM 17), where the insured has a physical place of business and the vehicles are dispatched from while operating under a NYS Department of Transportation permit.

NAME OR DESIGNATION OF BRANCH OFFICE: _____

  BRANCH OFFICE PHYSICAL ADDRESS: _____

  BRANCH OFFICE MAILING ADDRESS: _____

  TELEPHONE NUMBER OF BRANCH OFFICE: _____

  CONTACT PERSON: _____

NAME OR DESIGNATION OF BRANCH OFFICE: _____

  BRANCH OFFICE PHYSICAL ADDRESS: _____

  BRANCH OFFICE MAILING ADDRESS: _____

  TELEPHONE NUMBER OF BRANCH OFFICE: _____

  CONTACT PERSON: _____

NAME OR DESIGNATION OF BRANCH OFFICE: _____

  BRANCH OFFICE PHYSICAL ADDRESS: _____

  BRANCH OFFICE MAILING ADDRESS: _____

  TELEPHONE NUMBER OF BRANCH OFFICE: _____

  CONTACT PERSON: _____

(Additional sheets may be attached if necessary)

PERM 50e (9/93)

NEW YORK STATE DEPARTMENT OF TRANSPORTATION
## INSPECTION AND/OR SUPERVISION PAYMENT AGREEMENT
## FOR HIGHWAY WORK PERMITS

Permit No. _____

As a condition of the attached permit and in consideration of the issuance of the attached permit, _____ as permittee, hereby agrees as follows: The permittee will reimburse the New York State Department of Transportation for inspection and/or supervision of the permit work by Department employees which exceeds one work hour.

If the Department determines that the proposed work on a specific permit project will exceed five (5) workdays of inspection, the permittee will be required to secure the services of a reputable consulting engineering firm. This firm, upon approval by the Department, will be responsible for all inspection and/or supervision of the permit work.

It is estimated that _____ Work Days of inspection time will be required and that the cost per Work Day to be reimbursed, will be $370.00. These estimates are not intended to be final and the permittee agrees to pay reimbursement for all reasonable expenses incurred by the Department of Transportation in necessary inspection and/or supervision of work performed pursuant to this permit. The Department of Transportation shall be the sole judge of whether such inspection and/or supervision is necessary.

The permittee will be billed on a monthly basis and the permittee agrees to pay the charges as billed within thirty days of the date of billing. Failure to pay as billed within the specified time limit may result in the revocation of this permit.

_____

**PERMITTEE SIGNATURE**

_____

**If corporation or business, state name and position**

_____

**Date**

KNOW ALL MEN BY THESE PRESENTS:

That I (We), of the Town of <u>Aurelius</u> County of <u>Cayuga</u> State of <u>New York</u>, owner of the lands adjacent to State <u>Routes 5 & 20</u> State Highway <u>590</u> including the approach roadway to <u>Fingerlakes Mall</u> named in the Town of <u>Aurelius</u> County of <u>Cayuga</u> have permitted the New York State Department of Transportation and its agents to permanently enter upon said lands for the purpose of maintaining or replacing appurtenances for traffic signal including inductance loop wire, conduit, pullboxes, and cable, and hereby release them its officers and employees from all claims for damage that have been done or which may occur by reason of such occupancy of said lands.

BY: _____ L.S.

_____ L.S.

State of New York:

County of _____

On this _____ day of _____, 20_____

Before me, the subscriber, personally appeared _____ to me personally known to be the same person described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

_____
Notary Public

PERM 44e (8/01)

## SURETY BOND (PERFORMANCE)
### (INSURANCE AND INDEMNITY COMPANY NAME)

BOND NO._____    AMOUNT_____

KNOWN ALL BY THESE PRESENTS, That we,_____ (*PRINCIPAL'S NAME*)
having its principle place of business at _____, as Principal, and
_____(*INSURANCE AND INDEMNITY COMPANY*), as Surety, having an
office and usual place of business at _____ are held and firmly bound
unto the DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK, in the full and just sum of
_____ Dollars ($_____) to the payment of which, well and truly to be made,
we bind ourselves, our heirs, executors, administrators, successors and assigns, to jointly and severally, firmly by these presents.

WHEREAS, said Principal will submit and has submitted plans and specifications for work, within a State highway, deemed necessary by the Commissioner of Transportation, or his duly authorized delegate, and

WHEREAS, said Principal has received and will apply from time to time for permits for the purpose of constructing or maintaining drive entrances, sewer lines, water mains, gas mains, utility lines and poles, street intersections, curb, sidewalk, drainage and excavating for miscellaneous structures, etc., on or within the right of way of highways under the jurisdiction of the State of New York, Department of Transportation.

WHEREAS, this obligation is for the purpose of insuring and guaranteeing the timely and workmanlike completion of such work as reasonably determined by the Commissioner of Transportation or his duly authorized delegate,

IT IS AGREED and understood among the parties hereto that upon the reasonable determination that such work is not being timely performed or is not being or has not been performed in a workmanlike manner by said Principal, the Commissioner of Transportation or his duly authorized delegate may require said Surety to promptly complete said work in a timely and workmanlike manner, or the Commissioner of Transportation or his duly authorized delegate may direct completion of said work with forces chosen by the Commissioner, the costs of which work will be reimbursed by said Surety up the amount designated above, all of which determinations shall be within the sole and exclusive discretion of the Commissioner of Transportation or his duly authorized delegate.

IT IS FURTHER AGREED that said Principal and said Surety shall indemnify and save harmless the State of New York, Department of Transportation, from all liability, damages and expenses of every kind and nature, resulting directly or indirectly to persons or property and arising from and in consequence of any license or permit, and shall well, truly and faithfully perform the duties and privileges pertaining to any license or permit and shall restore such State highways to their original conditions.

IT IS FURTHER AGREED that said Principal and said Surety shall further indemnify, save harmless and pay the New York State Department of Transportation, any damages, loss, charges or expenses which shall, in any way, be sustained or incurred by it in relation to or in connection with any and all such claims, actions, suits or proceedings at law or in equity.

IN TESTIMONY WHEREOF, said Principal has hereunto set his hand and seal and said Surety has caused this instrument of writing to be executed. SIGNED, sealed and dated this _____ Day of_____Year_____.

This Bond takes effect _____ and shall remain in full force until the work is satisfactorily completed and accepted.

| PRINCIPAL | SURETY |
|---|---|
| (*NOTE: If DBA also provide Name of Legal Entity and Copy of "Certificate of Conducting Business under an assumed Name" that was filed in County Clerk's Office, e.g. John Jones dba Jones Trucking*) | BY:_____<br>Attorney-in-Fact |
| | _____(Company Seal) |
| BY: _____ | Address:_____ |
| _____(Company Seal) | |
| Address:_____ | Telephone No.:_____ |
| Telephone No.:_____ | Note: Attach Power of Attorney, Financial Statement and acknowledgment by representative of the Surety showing his powers to execute such instrument. |

State of New York
Department of Transportation

Form PERM 33 (8/01)

# Highway Work Permit Application for Non-Utility Work

Instructions and Form

Submit three copies (photocopies acceptable)

## INSTRUCTIONS FOR COMPLETING THE APPLICATION FOR HIGHWAY WORK PERMIT – NON-UTILITY

**FRONT OF APPLICATION**

An Applicant may not have all pertinent information at the time of completing the application form since certain information relative to fees, insurance and guarantee deposits may be contingent upon determinations to be made by the Department. In such cases, the information may be left blank and remittance withheld until the information is determined by the Department.

Please complete the following:
- Permittee's name and address. For more than one applicant, also fill in the joint applicant's name and address.
- Federal Identification Number of the company or individual Social Security Number.
- Applicant's telephone number. A telephone number where applicant can be contacted concerning the application. Please include area code.
- Project Identification No. and Highway Work Permit No. will be completed by the issuing office.
- Name of Contact person and their telephone number in case of emergency.
- If Highway Work Permit is to be returned to someone other than the applicant, complete this section.
- Estimate the cost of work being performed in the State highway right-of-way and place this figure on the blank line.
- Indicate anticipated duration of work to be performed with starting date and ending date on this line.
- You may provide your own insurance, purchase insurance through the Department, if available, or provide an Undertaking (for Utilities and Municipalities only). If you choose to provide your own insurance, a PERM 17 will be necessary. The PERM 17 may be obtained at the office you obtained this form from. It must be completed by your insurance company and accompany the permit application upon submission. The Policy number and expiration date of the PERM 17 should be shown on this line.
- Give a brief description of the proposed work that is to be done under this permit
- Plans and specifications should accompany this application for any work that involves construction within the State highway right-of-way. Place a check mark on the lines for plans and specifications if they are attached.
- Location of the project should be identified by: State Route; State Highway Number, if known; State Highway reference markers and Town and County in which work area is located.
- SEQR requirements: This may be required for larger projects – Contact the Regional Office of the Department of Transportation to determine if these requirements are necessary.
- Signature of applicant (permittee) and date.
- Signature of second applicant, if any, and date.

**BACK OF APPLICATION**

- Check type of work that will be performed.
- In the appropriate column indicate:
  - Manner in which insurance coverage is furnished the Department, i.e., PERM 17 (P17) or Under-Taking (UT) or Insurance Fee (IF), if available (N/A means the Department's insurance is not available).
- Indicate total amount of permit fee and insurance fee, if applicable.
- Indicate check number of Guarantee Deposit or Bond Number, if required. This will be determined by the Department upon submission of application.

**Shaded areas will be completed by the Department of Transportation.**

**Remove the application form from the back of this packet and submit 3 copies to the Department for approval.**

RESPONSIBILITIES OF PERMITTEE
PURSUANT TO NON-UTILITY HIGHWAY WORK PERMITS

**FAILURE TO OBTAIN A PERMIT OR FAILURE TO COMPLY WITH THE TERMS OF A PERMIT MAY RESULT IN THE DEPARTMENT HALTING THE ACTIVITY FOR WHICH A PERMIT IS REQUIRED UNTIL ADEQUATE CORRECTIONS HAVE BEEN MADE.**

### PROTECTIVE LIABILITY INSURANCE COVERAGE

Permittee must have protective liability insurance coverage in accordance with Department requirements. See "Certificate of Insurance for Highway Permits" (Form PERM 17, NYSDOT).

Expiration of, or lack of, liability insurance automatically terminates the permit. Insurance coverage may be provided by furnishing the Department with one of the following:

1. A completed Certificate of Insurance for Highway Permits (Form PERM 17, NYSDOT).
2. Purchase the Department Blanket Policy for Highway Work Permits from the Department, if available. N/A shown on the Application in the insurance column means Department insurance coverage is not available for that type of project.
3. Provide an Undertaking. Undertakings are limited to Public Service Corporations and government units.

### COMPENSATION INSURANCE AND DISABILITY COVERAGE

The permittee is required to have compensation insurance and disability coverage as noted in the provisions of the Worker's Compensation Law and Acts amendatory thereof for the entire period of the permit, or the permit is invalid.

### NOTIFICATION

The following should be notified at the appropriate time as shown below:

1. Commissioner of Transportation, through Regional Office, one week prior to commencing work.
2. Area gas distributors 72 hours prior to any blasting.
3. Utility companies with facilities in work areas before starting work, in accordance with Industrial Code 53 (permission from utility company must be obtained before commencing work affecting utilities' facilities).
4. New York State Department of Transportation, Regional Signal Maintenance Shop, 3 days prior to starting work.
5. New York State Department of Transportation Regional Office at conclusion of work and return original copy of permit to Resident Engineer.

**Permit Notification for Annual Permits:** Notify by telephone, the Regional or Resident Engineer's Office in advance, when work is to be performed.

### SITE CARE AND RESTORATION

An Undertaking, a bond or a certified check in an amount designated by the Department of Transportation may be required by the Regional Office, before a permit is issued, to guarantee restoration of the site to its original condition. If the Department is obliged to restore the site to its original condition, the costs to the Department will be deducted from the amount of the permittee's guarantee deposit at the conclusion of the work. Costs in excess of the Bond/guarantee deposit on file will be billed directly to the permittee.

The permittee is responsible for traffic protection and maintenance including adequate use of signs and barriers during work and evening hours. Anyone working within the State highway right-of-way will wear high visibility apparel (orange/yellow) and hard hat.

No unnecessary obstruction is to be left on the pavement or the State highway right-of-way or in such a position as to block warning signs during non-working hours.

No work shall be done to obstruct drainage or divert creeks, water courses or sluices onto the State highway right-of-way.

All false work must be removed and all excavations must be filled in and restored to the satisfaction of the Regional Maintenance Engineer.

## COSTS INCURRED BY ISSUANCE OF THIS PERMIT

All costs beyond the limits of the protective liability insurance, surety deposits, etc. are the responsibility of the permittee. The State shall be held free of any costs incurred by the issuance of this permit, direct or indirect.

## SUBMITTING WORK PLANS

The applicant will submit work plans and/or a map as required by the Department. This shall include such details as measurements of driveways with relation to nearest property corner, positions of guys supporting poles and a schedule of the number of poles and feet of excavation necessary for completion of the work on the State right-of-way. A description of the proposed method of construction will be included.

Plan work with future adjustments in mind, as any relocation, replacement or removal of the installation authorized by this permit and made necessary by future highway maintenance, reconstruction or new construction, will be the responsibility of the permittee.

Driveway plans should be prepared in accordance with the POLICY AND STANDARDS FOR ENTRANCES TO STATE HIGHWAYS.

The permittee must coordinate the work with any state construction being conducted.

## TRAFFIC MAINTENANCE

A plan detailing how the permittee intends to maintain and protect traffic shall be submitted with work plans. Traffic shall be maintained on the highway in a safe manner during working and non-working hours until construction is completed. The permittee is responsible for traffic protection and maintenance, including adequate use of signs, barriers, and flag persons during working and non-working hours until construction is completed.
All sketches will be stamped with "MAINTENANCE OF TRAFFIC SHALL BE IN CONFORMANCE WITH THE NEW YORK STATE MANUAL OF UNIFORM TRAFFIC CONTROL DEVICES."

## COST OF INSPECTION AND SUPERVISION

Prior to issuance of the Highway Work Permit, the permittee may be required to sign an INSPECTION PAYMENT AGREEMENT FOR HIGHWAY WORK PERMITS (FORM PERM 50) agreeing to the payment of inspection charges and/or PAYMENT OF AGREEMENT FOR HIGHWAY WORK PERMITS DESIGN REVIEW (FORM PERM 51) for Department employees. Inspection charges will be based on number of work days. Design Review charges will be based on number of work hours.

## SCOPE

**Areas Covered:** Permits issued are for highways, bridges and culverts over which the New York State Department of Transportation has jurisdiction. (Local governments issue permits for highways under their jurisdiction.)

**Legal:** The privilege granted by the permit does not authorize any infringement of federal, state or local laws or regulations, is limited to the extent of the authority of this Department in the premises and is transferable and assignable only with the written consent of the Commissioner of Transportation.

**Commissioner's Reservation:** The Commissioner of Transportation reserves the right to modify fees and to revoke or annul the permit at any time, at his discretion without a hearing or the necessity of showing cause.

**Locations:** Work locations must be approved by the Department.

**Maintenance:** Property owners having access to a state highway shall be fully responsible for the maintenance of their driveway in accordance with POLICY AND STANDARDS FOR ENTRANCES TO STATE HIGHWAYS.

**Work Commencement:** The Permittee shall have a copy of the permit available at the site during the construction period. Work should start within 30 days from validation date of permit or said permit may be revoked.

## COMPLETION OF PROJECT

Upon completion of the work within the state highway right-of-way authorized by the work permit, the person and his or its successors in interest, shall be responsible for the maintenance and repair of such work or portion of such work as set forth within the Terms and Conditions of the Highway Work Permit.

PERM 33 (9/01)          STATE OF NEW YORK DEPARTMENT OF TRANSPORTATION          PREPARE 3 COPIES
                   HIGHWAY WORK PERMIT APPLICATION FOR NON-UTILITY WORK          (photocopies acceptable)

**Application is hereby made for a highway work permit:**          For Joint application, name and address of Second Applicant below:

Name _____          Name _____

Address _____          Address _____

City _____ State _____ Zip _____          City _____ State _____ Zip _____

Federal I.D. No. or Social Security No. _____

Applicant Telephone No. _____

Contact person in case of emergency _____

Telephone No. of contact person _____

**RETURN PERMIT TO (If different from above):**          **RETURN OF DEPOSIT/BOND TO (Complete only if different from permittee):**

Name _____          Name _____

Address _____          Address _____

City _____ State _____ Zip _____          City _____ State _____ Zip _____

1. Estimated cost of work being performed in state highway right-of-way $ _____

2. Anticipated duration of work: From _____ 20, _____ thru _____ , 20 _____ to apply to the operation(s) checked on the reverse side.

3. Protective Liability Insurance covered by Policy No. _____ ; expires on _____ 20 ____

4. A $20.00 fee will be charged for checks returned by the bank.

PROPOSED WORK (Brief description): _____

_____

_____

_____

ATTACHED: Plans _____ Specifications _____          LOCATION: State Route _____ State Highway_____

between Reference Marker _____          and Reference Marker _____

Town of: _____          County of: _____

SEQR REQUIREMENTS (Check appropriate item):
_____ Exempt _____ Ministerial _____ Type 11 _____ EIS or DEIS     Lead Agency _____

If project is identified to be ministerial, exempt, or TYPE 11, no further action is required.

If project is determined to be other than ministerial, exempt, or TYPE 11, refer to M.A.P.7.12-2, Appendix A SEQR REQUIREMENTS FOR HIGHWAY WORK PERMITS.

Acceptance of the requested permit subjects the permittee to the restrictions, regulations and obligations stated on this application and on the permit.

Applicant Signature _____ Date _____ 20 _____.

Second Applicant Signature _____ Date _____ 20 _____.

PERMIT IS ISSUED CONTINGENT UPON LOCAL REQUIREMENTS BEING SATISFIED.

*TEAR ON PERFORATION*

| CHECK TYPE OF OPERATION | Permit Fee | Insurance Fee | Perm 17 or Under Taking | Total Amount of Fee and/or Insurance | |
|---|---|---|---|---|---|
| 5. ☐ Single job – Permit issued for each job | | | | | |
| a. ☐ Driveway or roadway | | | | | |
| 1. ☐ Residential | $ 15 | $ 25 | | | |
| 2. ☐ Commercial – Minor | 550 | 175 | | | |
| a. ☐ Home Business | 100 | 75 | | | |
| 3. ☐ Commercial – Major – (Less than 100,000 square feet Gross Building Area) | 1400 | N/A | | | |
| 4. ☐ Commercial – Major – (100,000 square feet Gross Building Area and Greater) | Actual cost with Minimum of $2000 upon permit app. | N/A | | | |
| 5. ☐ Subdivision Street | 900 | N/A | | | |
| 6. ☐ Temporary access road or street | 200 | 150 | | | |
| b. ☐ Improvement | | | | | |
| 1. ☐ Residential | 15 | 25 | | | |
| 2. ☐ Commercial | | | | | |
| Check additional description below: | | | | | |
| a. ☐ Install sidewalk, curb paving, stabilized shoulder, drainage, etc. | 200 | 150 | | | |
| b. ☐ Grade, seed, improve land contour, clear land of brush, etc. | 100 | 75 | | | |
| c. ☐ Resurface existing roadway or driveway | 50 | 50 | | | |
| d. ☐ Annual resurfacing of residential and commercial roadways or driveways. | | | | | |
| 1. ☐ Per County | 150 | N/A | | | |
| 2. ☐ Per Region | 400 | N/A | | | |
| c. ☐ Tree Work | | | | | |
| 1. ☐ Residential | 15 | 25 | | | |
| 2. ☐ Commercial (not required for pruning if utility has annual maintenance permit) | 25 | 50 | | | |
| Check additional description below: | | | | | |
| a. ☐ Removal or planting | | | | | |
| b. ☐ Pruning, applying chemicals to stumps, etc. | | | | | |
| 3. ☐ Vegetation control for advertising signs | 150/sign | 75 | | | |
| d. ☐ Miscellaneous Construction | | | | | |
| 1. ☐ Beautifying ROW – (for Civic Groups only) | NC | 25 | | | |
| 2. ☐ Temporary signs, banners, holiday decorations | | | | | |
| a. ☐ Not-for-profit organizations | NC | 25 | | | |
| b. ☐ Organizations other than not-for-profit | 25 | 25 | | | |
| 3. ☐ Traffic control signals | 500 | 175 | | | |
| 4. ☐ Warning and entrance signs | 25 | 50 | | | |
| 5. ☐ Miscellaneous – Requiring substantial review | 400 | 175 | | | |
| 6. ☐ Miscellaneous | 25 | 50 | | | |
| 6. ☐ Encroachment caused by D.O.T. acquisition of property | 25 | 50 | | | |
| 7. ☐ Compulsory permit required for work performed at the request of D.O.T. | | | | | |
| a. ☐ Building demolition or moving requested by D.O.T. | NC | 25 | | | |
| 1. ☐ Demolition  2. ☐ Moving | | | | | |
| b. ☐ Improvement to meet Department standards | NC | 25 | | | |
| 8. ☐ Miscellaneous | 25 | 25 | | | |
| 9. ☐ Adopt a Highway | NC | N/A | | | |

Guarantee Deposit Check Number or Bond Number _____

TEAR ON PERFORATION

PERM 33 (8/01)
REVERSE

Exhibit "F-1"

Pending Agreement with NYDOT



STATE OF NEW YORK
DEPARTMENT OF TRANSPORTATION
REGION THREE
333 EAST WASHINGTON STREET
SYRACUSE, NEW YORK 13202
www.dot.state.ny.us

CARL F. FORD, P.E.
ACTING REGIONAL DIRECTOR

THOMAS J. MADISON, JR.
COMMISSIONER

June 19, 2006

Mr. Andrew R. Wiggers
Gregory Greenfield & Associates, LTD.
124 Johnson Ferry Road, NE
Atlanta, Georgia 30328

Dear Mr. Wiggers:

RE:     FINGERLAKES MALL EXPANSION
        HIGHWAY WORK PERMIT

We are enclosing a copy of the "Attachment to Permit" as noted in our July 29, 2005 letter, and reiterated in our April 26, 2006 email, for your review and signature.

As noted in Item #1 of the "Attachment to Permit", we now have approved plans from Beardsley Associates for the Schedule A right turn lane work on Routes 5&20 westbound.

Schedule B will be added by Amendment following our receipt of approved plans for the work on Clark Street.

Schedule C will be added by Amendment following finalization of the Maps for the dedication of the Limited Access. We will follow up with the Department's proposal shortly.

While the Attachment to Permit document includes the standard conditions, requirements and obligations for all major Highway Work Permits, please note Item #5, related to the potential sale of a property, which may be pertinent should Gregory Greenfield & Associates elect to sell the property prior to the completion of the Permit requirements.

Pertaining to the enumerated items in our 7/29/05 letter, the following are still outstanding:

2.      Please have Beardsley Associates forward a Statement of Verification that the SPDES II requirements have been met.

Mr. Andrew R. Wiggers
June 19, 2006
Page 2

3.    The $1400.00 fee for Highway Work Permit should be made out to the
Department of Transportation.

4.    The PERM 17 mailed to you on April 24, 2006 must be completed and forwarded
to the Albany address on the top left corner of the form.

5.    We have the inspection agreement.

6.    The Statement of Dedication mailed to you on April 24, 2006 must be completed.
As noted above, we will be forwarding the Department's proposal shortly.

7.    The enclosed "Attachment to Permit" must be signed and returned.

8.    Concerning the value of the performance guarantee, preliminary estimates are due
from Beardsley Associates and Stantec Consulting for highway mitigation, and our
office will include an amount for the Right of Way Access Dedication. We will
advise you of the total amount in the near future. The performance guarantee is to
be submitted in the form of a surety bond as forwarded 7/29/05. We are attaching
another copy for your convenience.

All of the above items are required for Permit issuance. No work in the State Highway
Right of Way can be undertaken without the Highway Work Permit.

If you have any questions or comments regarding the specific components of the Permit
process detailed in this letter, please contact Ms. Patti Williams of our office at 315-428-4623.
You may continue to direct engineering questions regarding the project to Mr. Paul Gera at (315)
428-4383.

Very truly yours,

*Diana L. Graser*

Diana L. Graser, P.E.
Transportation System Operations Engineer

Attachment (2)
cc:   Mr. John W. Drury, P.E., Beardsley Design Associates, 64 South St., Auburn, NY, 13021
     Mr. John Hartley, P.E., Stantec Consulting, 2250 Brighton-Henrietta Town Road,
       Rochester, NY 14623
     Mr. Jerry Scouten, Planning Board Chairman, Town of Aurelius, 1241 W. Genesee St Rd,
       Auburn, NY 13021
     Mr. Matthew Schooley, P.E., Barton & Loguidice, P.C., 290 Elwood Davis Rd,
       Liverpool, NY 13088

# "ATTACHMENT TO PERMIT"

This is a seven page attachment to Permit No. _____ issued to
Fingerlakes Mall, LLC (Permittee), pursuant to Section 52 of the Highway Law for work on
State highway right-of-way. This attachment, the application submitted by the Permittee, and all
other plans and documents submitted as a part of the application or subsequently approved by the
New York State Department of Transportation (Department) are a part of and incorporated into
Permit No. _____.

Fingerlakes Mall, LLC, as Permittee, agrees to the following conditions, requirements and
obligations which are in addition to, and not in lieu of, any requirements contained in 17
NYCRR, parts 125-130 and/or any requirements stated in the application of the Permittee:

1.  This Highway Work Permit will be issued in three parts, Schedule A, Schedule B, and
    Schedule C.

    All work under the permit will be according to plans, reports, specifications, and
    Mapping prepared by Beardsley Design Associates (Schedule A), Stantec Consulting
    (Schedule B), and Prudent Engineering LLP (Schedule C), which plans will be attached
    to and made part of this permit as the individual Schedules are approved.

    Schedule A allows for the construction of a lengthened right turn lane on Routes 5&20
    westbound, approaching the Clark Street intersection. Approved plans are attached to
    this document, and Schedule A is approved.

    Schedule B allows for the construction of an additional left turn lane on the Clark Street
    approach to Routes 5&20. Schedule B will be added by Amendment to this Permit upon
    approval of the plans.

    Schedule C allows for the dedication of Limited Access along selected frontage of the
    Fingerlakes Mall adjacent to Routes 5&20. Schedule C will be added by Amendment
    upon approval of the Appropriation Map depicting access limitations.

    It is understood alterations may be necessary to meet unforeseen field conditions or to
    provide for inadvertent omissions or mistakes in the plans and specifications approved.
    The Department will determine whether such changes are necessary and if such
    determined to be necessary they will be made by the Permittee to the satisfaction of the
    Department. The intent is not to alter or expand the scope of work as approved by the
    Department, but to provide flexibility to make minor alterations, additions, or
    subtractions necessary to complete the work within the original concept of the plans as
    approved. All improvements and work undertaken by the Permittee shall be at no cost to
    the Department.

2. Permittee agrees to submit a surety bond (performance) issued in the amount of $XXXXXX by a surety qualified and authorized to do business in the State of New York, before commencement of work, to the Department to assure that the work pursuant to the authority of this permit will be completed in a timely manner according to the plans and specifications approved by the Department. The Permittee is bound to complete all the work determined by the Department to be necessary and have it be in accordance with the Department's standards and specifications. The surety bond amount has been determined based upon the Permit requirements.

3. As a precondition to the issuance of this permit, Permittee agrees to submit to the Department evidence of insurance covering that section of the highway right-of-way for which work is being performed under this permit, and to keep such insurance in full force and effect during the entire term of permit until acceptance of all work by the Commissioner of Transportation. This insurance supplied will be Protective Liability in accordance with the Department's "Certificate of Insurance for Highway Work Permits for Major Commercial Projects (PERM 95)".

4. Permittee agrees to hold harmless, defend, and indemnify the Department, the State of New York, and all employees of the State from any and all claims, actions, suits, proceedings, costs, expenses, judgments, damages and liabilities, including attorney's fees, arising out of, or in connection with, or resulting from the negligent or other wrongful actions of Permittee, its employees, agents and contractors in conjunction with the work authorized by this permit.

5. All approvals and/or permits granted shall apply only to the Permittee. If the right to the site is transferred to another party before construction of the mitigation is completed and accepted by the Department, this permit will be canceled and the new party will be required to obtain permits from the Department to carry out the project as approved. The above notwithstanding, the Department agrees that any surety or financial institution involved in providing bonding or financing of the commercial center or the work covered by this permit may become successor to the rights of the Permittee upon re-application and determination by the Department that there are no changed conditions requiring a modified mitigation plan, and a new permit will be issued and the Department shall recognize any such successor as being the Permittee hereunder.

If modified mitigation is required by the Department and such new party agrees to perform same and satisfies the Department's requirements regarding same, they shall be granted a permit.

Permittee agrees that this Highway Work Permit and any approvals granted hereunder shall only apply to the Permittee. In the event that the Permittee enters into a contract for the purchase and sale of the site before the mitigation is completed and accepted by the Department, Permittee agrees to continue to be bound by the terms and conditions of this permit and that the surety bond filed therefore shall continue in full force and effect until

such time as Permittee's successor in interest is substituted as Permittee on this highway work permit subject to the approval of this Department.

6. All authority granted by this permit relates solely to that authority within the discretion of the Commissioner of Transportation. All other permits and approvals required for the Project shall be the responsibility of the Permittee and there shall be no liability placed upon the Department with respect to such other requirements.

7. This permit shall not be construed as conveying to the Permittee any right to trespass upon the lands of parties not party to this agreement to perform the permitted work or as authorizing the impairment of any rights, title or interest in real or personal property held or vested in a person not a party to the permit.

8. In the event the Permittee does not comply with the terms of this permit, the Department reserves the right to reconsider and cancel this approval at any time. The Department may decide to continue, rescind or modify this permit in such a manner as it may find just and equitable.

9. The Permittee shall not commence construction until it has purchased in fee, or obtained permanent easements for, at no cost to the State, all lands upon which the transportation improvements authorized by this permit are to be built and accepted by the State, except for land now presently a part of the New York State Highway Right-of-Way. Should the Permittee not be able to acquire, or be shown not to have acquired, real property interests acceptable under this paragraph and sufficient to carry out all permit work and other requirements of this permit, the Department may order all work being carried out pursuant to this permit halted and require the Permittee to restore the subject highway to the condition in which said road existed prior to the commencement of work by the Permittee. All such restoration work will be accomplished at no cost to the State. At the conclusion of such restoration work, the Department will cancel this permit.

10. In accordance with the Findings Statement issued by the Town of Aurelius pursuant to the State Environmental Quality Review Act (SEQRA), the Permittee agrees that it will not accept issuance of a Certificate of Occupancy for purposes of opening any portion of this project unless and until all of the mitigation work required in the Findings Statement for opening is complete and approved by the Department. For ease of reference, the pertinent section of the Findings Statement is as follows:

The Permittee agrees that the People of the State of New York will suffer inconvenience, delay and damages if the proposed development is opened prior to the completion of all mitigation work required for opening of the development as determined by the Department.

As such, the Permittee agrees to a liquidated sum of damages in the amount of $5000 per day, due to the People of the State of New York, in the event the Permittee accepts issuance of a Certificate of Occupancy for the project, unless and until all of the

mitigation work required for opening, as determined by the Department, is completed and approved by the Department as expressed in writing to the Town of Aurelius.

11. The Department of Transportation will have final approval over traffic control measures during all permit work. If necessary, during any work allowed by this permit, the Department may require that the Permittee implement any and all measures to insure the safety of the traveling public or maintain traffic flow. Permittee shall comply with such direction or requirement(s). Maintenance and protection of traffic shall be provided in accordance with the New York State Manual of Uniform Traffic Control Devices.

12. The Permittee shall formally contact the local municipality and local transit provider prior to the opening of the project and request that public transit service to the Development be considered. The Permittee shall provide copies of their request and subsequent responses to the Department. This shall not require that transit service be requested to be supplied at the Permittee's, or any owners of the project's, expense.

13. Prior to issuance of this permit, the Permittee agrees to execute a "New York State Department of Transportation Consultant Inspection Agreement For a Highway Work Permit" and be bound, and abide by, that agreement's requirements for the duration of all mitigation work covered by this permit.

14. The Permittee shall develop a schedule for the accomplishment of all work authorized by this permit. This schedule should indicate anticipated start and finish dates for the various items in the contract. The Permittee shall submit this schedule to the Department for informational purposes 30 days prior to the anticipated start of work.

15. The Permittee shall file with the Regional Office a Notice of Intention to commence work at least 5 calendar days in advance of the time of intended commencement of work.

16. The Permittee shall maintain traffic flow on all affected streets and roadways in accordance with the requirements for the maintenance and protection of traffic shown on the plans and included in the specifications. If necessary, during any work allowed by this permit, the Department may require that the Permittee implement any and all reasonable additional measures or modify the requirements of the plans and specifications to insure, during performance of the work, the safety of the traveling public or to maintain traffic flow. Additionally, the Permittee shall maintain safe and adequate space for bicycle and pedestrian traffic along all affected sidewalks and bicycle paths at all times. Failure of the Permittee to comply with these requirements; or failure of the Permittee's contractor to comply with reasonable direction from either the Permittee's Engineering Firm or the Department's Engineer in regard to the maintenance of traffic flow, shall be deemed a breach of permit conditions, resulting in the suspension of any and all permit work at the discretion of the Department's Engineer, until proper Maintenance and Protection of Traffic provisions are implemented.

17. The Permittee will be responsible for and will make all arrangements for the relocation of any utilities in accordance with or as necessitated by the approved plans and specifications. Such relocations will be accomplished at no cost to the Department. The Permittee will not be allowed to commence work on a given portion of the State Highway System until the utility companies which have facilities on that portion of the system have provided the Department with a letter indicating that the Permittee and the related utility have agreed upon a coordinated work effort regarding the relocation and/or protection of their facilities.

18. The Permittee shall insure that all work performed under this permit and all other project work shall be accomplished in such a manner as to protect, maintain and preserve the existing drainage, other structures, and other drainage facilities under the jurisdiction of the Department.

19. The Permittee shall maintain suitable access to all properties that will remain open during construction. They shall re-establish suitable access to all properties that will remain open after the completion of improvements in accordance with Department guidelines.

20. The Permittee shall complete such work as is authorized by this permit within such a period as established by the Permittee at the time the final design approval of plans and specifications is granted. Except in the event of a force majeure, including the inability to obtain materials or labor despite reasonable attempts failure to complete all work within such time shall be deemed a breach of permit conditions. However, the Department may grant an extension allowing the completion of such work. All costs to the Department attributable to such extension shall be paid by the Permittee.

21. Upon satisfactory completion of the permit work, the Regional Director of Transportation shall issue a letter of approval to the Permittee. Upon such approval, all improvements made pursuant to this permit and intended to become the property of the People of the State of New York, constructed within the State highway right-of-way or on land to be purchased by the Permittee and dedicated in fee as State highway right-of-way shall become the property of the People of the State of New York under the jurisdiction of the Department. All mapping required in connection with the dedication of access limitations along the right-of-way shall be accomplished by the Permittee at no cost to the State and according to the Department standard practice. The maps shall be prepared and filed with the Department prior to the opening of the project. The Permittee shall make no claim for payment or compensation against the State or the Department, including any of its agents or employees, with respect to such work.

22. The Permittee shall not by sale, lease or in any other manner create any condition whereby additional access directly abutting the State highway other from that set forth in the SEQR EIS and/or record of decision or the approved traffic impact study, is created without the Department's review and approval.

23. The Permittee is cautioned about beginning work early or late in the construction season. Should the Permittee elect to begin any phase of mitigation work that is subsequently delayed or suspended due to poor weather conditions, the Department retains the authority to halt all permit work. The Department may require temporary work to restore the highway to safe and efficient traveling and operating conditions.

Any and all work necessary to replace, repair, or restore such temporary work during the winter months will be the responsibility of the Permittee. Any and all work necessary to replace such temporary work with permanent work during the following construction season shall be promptly coordinated by the Permittee with the Department and undertaken promptly by the Permittee at no cost to the Department. The performance bond for the permit work shall not be released until all permanent work is complete and approved by the Department.

24. The Permittee shall not commence construction until it has obtained, at no cost to the State, all grading and private driveway reestablishment releases from all property owners affected by the transportation improvements authorized by this permit. It is understood and agreed that the Permittee shall perform the work authorized by these releases as part of the work required under this permit. Should the Permittee not be able to acquire, or be shown not to have acquired, all necessary releases from private property owners sufficient to carry out all permit work and other requirements of this permit, the Department may order all work being carried out pursuant to this permit halted and require the permittee to restore the subject highway to the condition in which said road existed prior to the commencement of work by the Permittee. All such restoration work will be accomplished at no cost to the State. At the conclusion of such restoration work, the Department will cancel this permit.

25. The Permittee agrees to submit to the Department the names of the Prime Contractor and all sub-contractors that are anticipated to be constructing the work authorized by this Permit before they are retained by the Permittee. These names will be submitted to both the System Operations Group and Construction Group of the Department for review and approval prior to the required pre-construction meeting. The Permittee understands, accepts, and agrees to the Department's right to disapprove of any contractor submitted based upon that Contractor's past history and performance on previous projects with the Department. Once the Department has approved of all of the Permittee's contractors, the Permittee will instruct these contractors to be present at the pre-construction meeting.

26. The Permittee will provide to the Department, through their consulting engineering firms Beardsley Design Associates (Schedule A), and Stantec Consulting (Schedule B), a set of "As-Built" Record Plans upon completion of the work authorized by this permit. These plans will be on full size paper sheets and will include final cross sections. The preparation of these plans will require the coordination and interaction between these firms and the consulting engineering firm retained by the Permittee to do the construction inspection of the work in this project.

Page 6 of 7

27. All work contemplated under this Permit is to be covered by and in conformity with the Standard Specifications(Metric Units) of January 2, 2002, except as modified on the Permit Plans and in the Permit Documents.

The Permittee's attention is directed to Section 104 - Scope of Work, Section 105 - Control of Work, Section 106 - Control of Material, and Section 107 - Legal Relations and Responsibility to Public, of the Standard Specifications, which state responsibilities of the Permittee and the Permittee's contractor(s), and the overall authority of the Department of Transportation for highways under New York State jurisdiction.

28. It is understood and agreed that the Department will not release any portion of the Surety Bond until the Permittee has executed all of the provisions stated in the "NYSDOT Statement Of Dedication Limiting Access Mitigation Requirement For Obtaining a Highway Work Permit" agreement.

## HIGHWAY WORK PERMIT #

## WE THE UNDERSIGNED UNDERSTAND AND AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS "ATTACHMENT TO PERMIT".

_____

(NAME OF PERMITTEE)

by: _____

_____

(TITLE)

_____

(DATE)

Page 7 of 7

PERM 44e (6/01)

## SURETY BOND (PERFORMANCE)
## (INSURANCE AND INDEMNITY COMPANY NAME)

BOND NO._____    AMOUNT_____

KNOWN ALL BY THESE PRESENTS, That we,_____ (*PRINCIPAL'S NAME*)
having its principle place of business at _____, as Principal, and
_____(*INSURANCE AND INDEMNITY COMPANY*), as Surety, having an
office and usual place of business at _____ are held and firmly bound
unto the DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK, in the full and just sum of
_____ Dollars ($_____.___) to the payment of which, well and truly to be made,
we bind ourselves, our heirs, executors, administrators, successors and assigns, to jointly and severally, firmly by these presents.

WHEREAS, said Principal will submit and has submitted plans and specifications for work, within a State highway, deemed necessary by the Commissioner of Transportation, or his duly authorized delegate, and

WHEREAS, said Principal has received and will apply from time to time for permits for the purpose of constructing or maintaining drive entrances, sewer lines, water mains, gas mains, utility lines and poles, street intersections, curb, sidewalk, drainage and excavating for miscellaneous structures, etc., on or within the right of way of highways under the jurisdiction of the State of New York, Department of Transportation.

WHEREAS, this obligation is for the purpose of insuring and guaranteeing the timely and workmanlike completion of such work as reasonably determined by the Commissioner of Transportation or his duly authorized delegate,

IT IS AGREED and understood among the parties hereto that upon the reasonable determination that such work is not being timely performed or is not being or has not been performed in a workmanlike manner by said Principal, the Commissioner of Transportation or his duly authorized delegate may require said Surety to promptly complete said work in a timely and workmanlike manner, or the Commissioner of Transportation or his duly authorized delegate may direct completion of said work with forces chosen by the Commissioner, the costs of which work will be reimbursed by said Surety up the amount designated above, all of which determinations shall be within the sole and exclusive discretion of the Commissioner of Transportation or his duly authorized delegate.

IT IS FURTHER AGREED that said Principal and said Surety shall indemnify and save harmless the State of New York, Department of Transportation, from all liability, damages and expenses of every kind and nature, resulting directly or indirectly to persons or property and arising from and in consequence of any license or permit, and shall well, truly and faithfully perform the duties and privileges pertaining to any license or permit and shall restore such State highways to their original conditions.

IT IS FURTHER AGREED that said Principal and said Surety shall further indemnify, save harmless and pay the New York State Department of Transportation, any damages, loss, charges or expenses which shall, in any way, be sustained or incurred by it in relation to or in connection with any and all such claims, actions, suits or proceedings at law or in equity.

IN TESTIMONY WHEREOF, said Principal has hereunto set his hand and seal and said Surety has caused this instrument of writing to be executed. SIGNED, sealed and dated this _____ Day of_____ Year_____.

This Bond takes effect _____ and shall remain in full force until the work is satisfactorily completed and accepted.

PRINCIPAL
*(NOTE: If DBA also provide Name of Legal Entity and Copy of*
*"Certificate of Conducting Business under an assumed Name"*
*that was filed in County Clerk's Office, e.g. John Jones dba*
*Jones Trucking)*

BY: _____

_____(Company Seal)

Address:_____

_____

Telephone No.:_____

SURETY
_____

BY:_____
Attorney-in-Fact

_____(Company Seal)

Address:_____

_____

Telephone No.:_____

Note: Attach Power of Attorney, Financial Statement and acknowledgment by representative of the Surety showing his powers to execute such instrument.

NEW YORK STATE
DEPARTMENT OF TRANSPORTATION
ACQUISITION MAP
PIN A9998870140

AUBURN-SENECA FALLS
STATE HIGHWAY NO. 590

MAP NO. 142
PARCEL NOS.
212, 213, 214 AND 215
SHEET 5 OF 5 SHEETS

The purpose of this map is to fully prohibit the right of access to and from abutting property along the portions
of the existing highway boundary of the Auburn-Seneca Falls S.H. No. 590 (New York State Routes 5 and 20) as
described below along four different parcels, where access had heretofore been allowed to the adjacent owner.

PARCEL NO. 212:

Beginning at a point on the northerly highway boundary of the existing Auburn-Seneca Falls S.H. No. 590 (New York
State Routes 5 and 20), said point being 0.36± meters distant northerly, measured at right angles from station
-0+217.56± of the hereinafter described survey baseline; thence easterly along the existing highway boundary a
distance of 39.60± meters (129.9± feet) to a point 1.29± meters distant southerly, measured at right angles from
station -0+178.00± of said survey baseline.

PARCEL NO. 213:

Beginning at a point on the northerly highway boundary of the existing Auburn-Seneca Falls S.H. No. 590 (New York
State Routes 5 and 20), said point being 3.44± meters distant southerly, measured at right angles from station
-0+126.50± of the hereinafter described survey baseline; thence along the existing highway boundary the following
four (4) courses and distances: (1) easterly 69.20± meters (227.0± feet) to a point 6.33± meters southerly, measured
at right angles from station -0+057.36± of said survey baseline; (2) northeasterly 59.64± meters (195.7± feet) to
a point 11.38± meters northerly, measured at right angles from station -0+000.40± of said survey baseline; (3)
southeasterly 54.34± meters (178.3± feet) to a point 10.66± meters southerly, measured at right angles from
station 0+049.24± of said survey baseline; (4) easterly 15.01± meters (49.3± feet) to a point 11.25± meters southerly,
measured at right angles from station 0+064.24± of said survey baseline.

PARCEL NO. 214:

Beginning at a point on the northerly highway boundary of the existing Auburn-Seneca Falls S.H. No. 590 (New York
State Routes 5 and 20), said point being 4.90± meters distant southerly, measured at right angles from station
0+110.00± of the hereinafter described survey baseline; thence along the existing highway boundary the following
two (2) courses and distances: (1) northeasterly 11.81± meters (38.8± feet) to a point 2.83± meters distant southerly,
measured at right angles from station 0+121.58± of said survey baseline; (2) northeasterly 1.52± meters (5.0± feet)
to a point 1.90± meters distant southerly, measured at right angles from station 0+122.78± of said survey baseline.

PARCEL NO. 215:

Beginning at a point on the northerly highway boundary of the existing Auburn-Seneca Falls S.H. No. 590 (New York
State Routes 5 and 20), said point being 2.20± meters distant northerly, measured at right angles from station
0+226.66± of the hereinafter described survey baseline; thence northeasterly along the existing highway boundary
a distance of 1.01± meters (3.3± feet) to a point 2.56± meters distant northerly, measured at right angles from
station 0+227.61± of said survey baseline.

The above mentioned survey baseline being the 2004 survey baseline of property of Fingerlakes Mall Limited
Partnership (reputed owner) and described as follows:

Beginning at Station -0+242.574 thence North 85°50'08" East to Station 0+000.000, thence North 85°58'21" East to
Station 0+115.789, thence North 85°11'05" East to Station 0+279.679.

All bearings based on the New York State Plane Coordinate System Central Zone and refer to true North at the
76°35' Meridian of West Longitude.

I hereby certify that the right
of access to and from abutting
property is to be fully prohibited
along the portions of the existing
highway boundary described above.

Date_____ 20 _____



_____


Michael A. Shomma, P.E.
Regional Design Engineer
for the Regional Director of
Transportation, Region No. 3

"Unauthorized alteration of a survey
map bearing a licensed land surveyor's
seal is a violation of the New York
State Education Law."

I hereby certify that this map was
prepared in accordance with current
NYSDOT policies, standards and
procedures.

Date _____ 20 _____

_____

Michael J. Wright, Land Surveyor
P.L.S. License No.  049155

## FINGERLAKES MALL LIMITED PARTNERSHIP
( Reputed Owner of Right of Access )

Map of portions of the existing highway boundary over which the Commissioner of Transportation deems necessary that
the right of access to and from abutting property shall be fully prohibited by appropriation for purposes connected
with the highway system of the State of New York pursuant to Section 30 of the Highway Law and the Eminent Domain
Procedure Law.

There is excepted from this appropriation all the right, title and interest, if any, of the United States of America in
or to said property.

Pursuant to the statute(s) set forth above and the
authority delegated to me by Official Order of the
Commissioner of Transportation, this acquisition map is
hereby approved and filed in the main office of the
New York State Department of Transportation.

Date _____ 20 _____

I have compared the foregoing copy of the map with the
original thereof, as filed in the Office of the State
Department of Transportation, and I do hereby certify
the same to be a true and correct copy of the original
and of the whole thereof.

_____

Real Estate Division

_____

Real Estate Division

FILE NAME : 512-GEN BMAP MAP V-0 ACCESS.DGN

STATE HIGHWAY NO. 590
AUBURN-SENECA FALLS
NEW YORK STATE
DEPARTMENT OF TRANSPORTATION
ACQUISITION MAP
PIN A599887O14O

MAP NO. 142
PARCEL NOS.
212, 213, 214 AND 215
SHEET 1 OF 5 SHEETS

PARCEL SUMMARY:
Type: Pr 212 - PROHIBIT ACCESS
       Pr 213 - PROHIBIT ACCESS
       Pr 214 - PROHIBIT ACCESS
       Pr 215 - PROHIBIT ACCESS

Affects a Portion of 2003 Tax
Map Sec. No. 115.13-1-01,
Map Sec. No. 115.13-1-02,
Map Sec. No. 115.13-1-03
Town of Aurelius
State of New York
Country of Cayuga

MAP REFERENCE INFORMATION:
Part of Lot No. 44 in
Town of Aurelius

Parcel Locator Points:
Parcel No. 212
  N 325176.149
  E: 2474121.317
Parcel No. 213
  N 325178.972
  E: 2475512.415
Parcel No. 214
  N 325194.424
  E: 2477748.404
Parcel No. 215
  N 325211.221
  E: 2478604.126

SCALE  1:500
ONE SQUARE METER EQUALS 10.76386391 SQUARE FEET.
ONE METER EQUALS 3.28083333333 FEET.
FILE NAME = 512-D75 BASEMAP V-O ACCESSION

TRUE NORTH AT THE 76°35'
MERIDIAN OF WEST LONGITUDE



FINGERLAKES MALL
LIMITED PARTNERSHIP
(REPUTED OWNER)

FINGERLAKES MALL
LIMITED PARTNERSHIP
(REPUTED OWNER)
L015 P195
TM# 115.13-02

2004 SURVEY
BASELINE

TO PROHIBIT ACCESS

AUBURN - SENECA FALLS  S.H. NO. 590  (NYS ROUTES 5 & 20)

1970 HIGHWAY BOUNDARY

MERIDIAN OF WEST LONGITUDE
TRUE NORTH AT THE 76°35'

SCALE 1:500
10  0  10  20  30 m

ONE METER EQUALS 3.280833333 FEET.
ONE SQUARE METER EQUALS 10.763867361 SQUARE FEET.

ONE METER EQUALS 3.280833333 FEET.
ONE SQUARE METER EQUALS 10.763867361 SQUARE FEET.

NEW YORK STATE
DEPARTMENT OF TRANSPORTATION
ACQUISITION MAP
PIN A599887O14O

AUBURN-SENECA FALLS
STATE HIGHWAY NO. 590

MAP NO. 142
PARCEL NOS.
212, 213, 214 AND 215
SHEET 2 OF 5 SHEETS

NEW YORK STATE
DEPARTMENT OF TRANSPORTATION
ACQUISITION MAP
MAP NO. 142
PARCEL NOS. 212, 213, 214 AND 215
SHEET 3 OF 5 SHEETS

AUBURN-SENECA FALLS
STATE HIGHWAY NO. 590
PIN A99887D140

TRUE NORTH AT THE 76°35'
MERIDIAN OF WEST LONGITUDE

SCALE 1:500
ONE METER EQUALS 3.2808333333 FEET.
ONE SQUARE METER EQUALS 10.7638673611 SQUARE FEET.

DETAIL OF M142/P214

NEW YORK STATE
DEPARTMENT OF TRANSPORTATION
ACQUISITION MAP
PIN A99988701040
SHEET 4 OF 5 SHEETS
PARCEL NOS.
212, 213, 214 AND 215
MAP NO. 142
AUBURN-SENECA FALLS
STATE HIGHWAY NO. 590

EXHIBIT "G"
Tenant Estoppel Certificate
[THIS FORM IS SUBJECT TO APPROVAL OF BUYER'S LENDER]

_____ __, 2006

Addressed to Fingerlakes Mall, LLC, Fingerlakes Acquisition, LLC and Lender (as defined below)

Re:    Lease    from    _____,    dated    _____,    as    amended
_____    ("**Lease**") for Suite ____, located at
Fingerlakes Mall, Aurelius, New York (the **Property**")

To Whom it May Concern:

The undersigned is the holder of the tenant's interest under the Lease demising a portion of the Property (the "**Leased Premises**"). We understand that Fingerlakes Mall, LLC ("Seller") intends to transfer the Property to Fingerlakes Mall Acquisition, LLC ("**Buyer**), and that Buyer's lender ("**Lender**") may be the holder of a first mortgage on the Property, and that Seller, Buyer and Lender require this certification from us.

Accordingly, we hereby certify to Seller, Buyer and Lender as follows:

1    The Lease is in full force and effect and has not been modified, amended or supplemented in any way other than those amendments shown above, except as follows (Insert dates of all modifications, amendments, or supplements, even if attached; if none, write "None"):

2    There are no other representations, warranties, agreements, concessions, commitments, or other understandings between the undersigned and the Landlord regarding the Property other than as set forth in the Lease or paragraph 1 above.

3    The landlord under the Lease has completed and delivered, and the undersigned has accepted, the Leased Premises in the condition required by the Lease. The Leased Premises consists of approximately _____ square feet. The undersigned has taken possession of and is occupying the Leased Premises on a rent-paying basis and the monthly base rent payable thereunder is $_____, payable in advance. All improvements and work required under the Lease to be made by the landlord thereunder and all facilities required under the Lease to be furnished to the Leased Premises have been completed to the satisfaction of the undersigned, except as follows (Insert description of any improvements and work to be completed by the landlord under the Lease; if none, write "None"): _____.

4    The current expiration date of the Lease, excluding any unexercised renewals and extensions, is _____. The undersigned has neither any option or right to purchase the Property or any portion thereof or any right or option to terminate the Lease or any of its obligations thereunder in advance of the scheduled termination date of the Lease as noted above, except as

follows (Insert description of any purchase rights or options, and/or any early termination rights; if none, write "None"): _____.

      5. All rents, additional rents and other sums due and payable under the Lease have been paid in full through _____, 200__ ,and no rents, additional rents or other sums payable under the Lease have been paid for more than one (1) month in advance of the due dates thereof.

      6. The Seller is not in default under any of the requirements, provisions, terms, conditions or covenants of the Lease to be performed or complied with by the landlord under the Lease, the obligation to pay rent and additional rent is not subject to offset, and no event has occurred or situation exists which would, with the passage of time and/or the giving of notice, constitute a default or an event of default by the landlord under the Lease.

      7. The undersigned is not in default under any of the requirements, provisions, terms, conditions, or covenants of the Lease to be performed or complied with by the undersigned, and no event has occurred or situation exists which would, with the passage of time and/or the giving of notice, constitute a default or an event of default by the undersigned under the Lease.

      8.    The undersigned has received no notice from any governmental authority or other person or party claiming a violation of, or requiring compliance with, any Federal, State or local statute, ordinance, rule, regulation or other requirement of law, for environmental contamination at the Leased Premises, and, to the best knowledge of the undersigned, no hazardous, toxic or polluting substances or wastes have been generated, treated, manufactured, stored, refined, used, handled, transported, released, spilled, disposed of or deposited by Tenant on, in or under the Leased Premises.

      9. The undersigned has paid to the landlord under the Lease a security deposit of $_____ (if none, insert "None").

      10. This Estoppel Certificate may be relied on by Seller, Buyer and Lender.

                      Very truly yours,

                  _____

            By:    _____
                Name:

EXHIBIT "H"

ASSIGNMENT AND ASSUMPTION OF LEASES AND SECURITY DEPOSITS

KNOW ALL MEN BY THESE PRESENTS, that

[_____], (hereinafter referred to as "Assignor"), in consideration

of Ten ($10.00) Dollars and other good and valuable consideration to it in hand paid by

_____

_____(hereinafter referred to as "Assignee") does hereby assign unto

Assignee, its heirs, administrators, executors, successors and assigns, all of Assignor's right, title and

interest in and to all leases, tenancies and security deposits as set forth on Schedule "A" annexed

hereto and made a part hereof, pertaining to the shopping center located [_____]

(the "Premises").

TO HAVE AND TO HOLD the same unto the said Assignee, its heirs, administrators,

executors, successors and assigns, subject to the covenants, conditions and provisions therein

contained.

Assignee hereby assumes and agrees to perform all of the obligations with respect to such

leases, tenancies and security deposits arising on or subsequent to the date hereof. Assignee further

agrees to indemnify Assignor and hold Assignor harmless with respect to any expense, liability, court

costs and reasonable attorney's fees (including, without limitation those incurred to enforce this

indemnity), which Assignor may incur as a result of a breach or default by Assignee of its covenants

herein.

Assignor agrees to indemnify and hold Assignee harmless from and against any and all loss,

cost or damage including reasonable attorney's fees (including, without limitation those incurred to

enforce this indemnity). that may be incurred by Assignee by reason of Assignor's failure to comply

{GNS: #00006122 v.3 #10006-0056 7/31/2006 04:52 PM}

with the terms of the leases during the Assignor's period of ownership of the Premises except to the extent that any such failure has been waived by such tenant's estoppel or other documentation.

IN WITNESS WHEREOF, the Assignor and Assignee have hereunto set their hands and seals as of the ____ day of _____, 2006.

WITNESS:


_____        By:    _____

WITNESS:


_____        By:    _____

WITNESS: